IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| Plaintiff, | |
| v. | Case No. 1:20-cr-00117-RJS |
| LUIS FERNANDO ALBARRAN-SOTELO, | Chief District Judge Robert J. Shelby |
| Defendant. | |

Defendant Luis Fernando Albarran-Sotelo was recently convicted of violating 8 U.S.C. § 1326 and sentenced to a prison term of six months followed by three years of supervised release.[1] The United States contends Albarran-Sotelo violated his supervised release by failing to report to the U.S. Probation Office after his release from custody and then unlawfully reentering the United States.[2] Now before the court is Albarran-Sotelo's Motion to Dismiss,[3] which seeks dismissal of the United States' allegation that he violated his supervised release. For the reasons set forth below, the Motion is DENIED.

## BACKGROUND AND PROCEDURAL HISTORY

Albarran-Sotelo is a non-citizen who has been repeatedly removed from the United States and convicted of violating 8 U.S.C. § 1326, the statute criminalizing the reentry of previously

---

[1] *See* Dkt. 21, *Judgment in a Criminal Case*.

[2] *See* Dkt. 23 (SEALED); Dkt. 35 (SEALED).

[3] Dkt. 47.

removed non-citizens.[4]  The present dispute centers on a 2020 guilty plea and conviction for which Albarran-Sotelo was sentenced to a prison term of six months, with credit for time served, followed by three years of supervised release.[5]  At Albarran-Sotelo's sentencing hearing on January 7, 2021, the undersigned admonished him "not [to] commit any federal, state or local crime" during his supervised release and further directed him to contact the U.S. Probation Office within 72 hours of his release "if for some reason [he was] accidentally released instead of . . . deported."[6]

Yet, following his release from custody, Albarran-Sotelo failed to report to the U.S. Probation Office within the time directed by the court, prompting probation to file a petition for a violation of supervised release.[7]  After the petition was granted,[8] Albarran-Sotelo was eventually arrested at a Salt Lake City worksite and then appeared before a magistrate judge.[9]  The magistrate judge ordered him detained and remanded to the U.S. Marshals Service pending resolution of the matter.[10]  However, before any further proceedings were set, the United States moved to dismiss the petition upon learning that U.S. Immigration and Customs Enforcement had lodged a detainer on Albarran-Sotelo with the intention of deporting him.[11]  After the motion

---

[4] *See id.* at 1–2 (describing Albarran-Sotelo's recent violations, including his conviction in *United States v. Albarran-Sotelo*, No. 1:16-cr-00054 (D. Utah 2016)); Dkt. 48, *United States' Response to Defendant's Motion to Dismiss* at 1–3; *see also* Dkt. 45, *Transcript of January 7, 2021 Sentencing Hearing* at 10:22–23 ("This is [Albarran-Sotelo's] third time in federal court for an immigration-related violation.").

[5] Dkt. 21.

[6] Dkt. 45 at 13:5–16.

[7] *See* Dkt. 23 (SEALED).

[8] *See id.*; Dkt. 24 (SEALED).

[9] *See* Dkt. 34, *Executed Arrest Warrant*; Dkt. 27, *Minute Order for Proceedings on August 4, 2022*.

[10] Dkt. 27.

[11] Dkt. 30, *United States' Motion to Dismiss Petition*.

was granted,[12] Immigration and Customs Enforcement removed Albarran-Sotelo from the county.[13]  Only weeks later, Albarran-Sotelo managed to return to Utah, where he was once again arrested and charged with violating 8 U.S.C. § 1326.[14]

Albarran-Sotelo's latest entanglement has not only prompted a new criminal case,[15] but also rekindled the United States' efforts to terminate his supervised release for the 2020 conviction.[16]  For his part, Albarran-Sotelo counters that he was never given a written statement of the conditions of his supervised release, as directed by 18 U.S.C. §§ 3583(f), 3603(1), nor did he have actual notice of such conditions.[17]  Therefore, Albarran-Sotelo maintains the court is "preclude[d] . . . from finding [that he] violated the supervised release" and should dismiss the United States' latest allegations to that effect.[18]  For the reasons described below, the court disagrees.

## DISCUSSION

Two statutes—18 U.S.C. §§ 3583(f), 3603(1)—explain the notice requirements for defendants placed on supervised release.  The first, § 3583(f), provides:

> The court shall direct that the probation officer provide the defendant with a written statement that sets forth all conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.[19]

---

[12] Dkt. 32, *Order Granting Motion to Dismiss Petition*; *see also* Dkt. 33, *Order for Withdrawal of Supervised Release Violation Warrant*.

[13] *See* Dkt. 48 at 2.

[14] *See United States v. Albarran-Sotelo*, No. 1:22-cr-00107-RJS (D. Utah 2022).

[15] *Id.*

[16] *See* Dkt. 35 (SEALED).

[17] *See* Dkt. 47 at 9–11.

[18] *Id.* at 2.

[19] 18 U.S.C. § 3583(f).

Relatedly, § 3603(1) requires probation officers to "instruct . . . a person on supervised release . . . as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions."[20]  These statutes serve two primary purposes: (1) they seek to "ensure . . . the defendant is notified of the conditions of his supervised release" and (2) they mitigate the unfairness of sending him "back to prison for violating conditions . . . that he had no way of knowing existed."[21]  Yet, while "the statutes detail the obligations of the district court and the probation officer, they are silent with respect to remedies for noncompliance."[22]

The Tenth Circuit has not directly addressed the consequences of noncompliance with these statutes,[23] but other circuits have considered similar challenges to revocation proceedings.[24]  These circuits have generally held that a deviation from §§ 3583(f) or 3603(1) does not preclude revocation of supervised release where the defendant had "actual notice" of the

---

[20] 18 U.S.C. § 3603(1).

[21] *United States v. Arbizu*, 431 F.3d 469, 471 (5th Cir. 2005).

[22] *United States v. Ortega-Brito*, 311 F.3d 1136, 1138 (9th Cir. 2002).

[23] The United States cites two unpublished cases from the Tenth Circuit—*United States v. Kennedy*, 106 F. App'x 688 (10th Cir. 2004) and *United States v. Collins*, 261 F. App'x 807 (10th Cir. 2012)—which discuss, among other things, due process requirements for the revocation of supervised release.  However, neither case directly addresses whether deviating from 18 U.S.C. §§ 3583(f), 3603(1) vitiates a subsequent revocation of supervised release. Consistent with Tenth Circuit rules governing unpublished decisions, these cases are considered for their persuasive value and are not deemed controlling authority.  *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

[24] *See, e.g.*, *Arbizu*, 431 F.3d at 471; *Ortega-Brito* at 1138–39.

conditions of his supervised release.[25]  In *United States v. Villalona*, for example, the Fifth

Circuit affirmed a district court's revocation of supervised release where the defendant was given

oral notice of the conditions of supervised release at his sentencing hearing.[26]  Similarly, the

Ninth Circuit found actual notice where the defendant was told "orally at his original sentencing

hearing that he was forbidden from reentering or attempting to reenter the United States."[27]

Based on the general consensus among circuits, Albarran-Sotelo's supervised release for his

2020 conviction therefore turns on whether he received actual notice of the conditions of his

supervised release.[28]

    Albarran-Sotelo asserts that he never received a written statement, as required by

§ 3583(f), and that his sentencing hearing failed to provide him with actual notice of the

conditions of his supervised release.[29]  In his retelling, the "virtual, teleconference hearing" was

plagued by "[t]echnical difficulties," "brisk and technical" discussions, and profound

---

[25] *See, e.g.*, *Arbizu*, 431 F.3d at 470 ("Every other circuit that has confronted this issue has held that the government's failure to provide the notice required by the statutes does not limit the district court's authority to revoke supervised release where the defendant had actual notice of the release terms." (collecting cases)); *Ortega-Brito*, 311 F.3d at 1138 ("we agree with the First and Eighth Circuits and hold that, where a releasee received actual notice of the conditions of his supervised release, a failure to provide written notice of those conditions will not automatically invalidate the revocation of his release based upon a violation of such conditions." (citing cases)); *United States v. Fleck*, 833 F. App'x 976, 978 (4th Cir. 2020) (unpublished); *see also Notice*, *Black's Law Dictionary* (11th ed. 2019) ("Actual notice [is] . . . [n]otice given directly to, or received personally by, a party.").

[26] 205 F. App'x 291, 292–93 (5th Cir. 2006) (unpublished).

[27] *United States v. Perez-Fierro*, 256 F. App'x 96, 97 (9th Cir. 2007) (unpublished).

[28] The court has found only one recent case that deviates from the general approach described above.  In *United States v. Coates*, No. 2:14-cr-127-ALM-9, 2022 U.S. Dist. LEXIS 207647, at *21 (S.D. Ohio Nov. 14, 2022), the district court refused to revoke the defendant's supervised release where the sentencing court failed to comply with 18 U.S.C. § 3583(f).  In particular, the district court applied a narrow textual analysis and emphasized that the written notice requirement of § 3583(f) is mandatory.  However, this approach breaks from the clear weight of case law and does not persuasively account for the general discretionary nature of supervised release.  *See* 18 U.S.C. § 3583(a) (explaining that "[t]he court . . . *may* include as part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment" (emphasis added)).

[29] Dkt. 47 at 9–11.

misunderstandings about the nature of the sentence.[30]  In particular, Albarran-Sotelo stresses the

complicated nature of the sentencing, which dealt with his 2020 violation of 8 U.S.C. § 1326 and

his related violation of supervised release for an earlier conviction.[31]  He points to a remark from

the undersigned that he "made a mess" of the sentencing pronouncement and a later comment

that defense counsel could "explain [the sentence] further" as demonstrating his sentence was not

"easy to understand."[32]  Moreover, because Albarran-Sotelo expressed some confusion about the

length of his prison term, he maintains that "he didn't even understand the custodial sentence,

much less the term of supervision."[33]

      Despite the troubling narrative presented by Albarran-Sotelo, the record evinces a far

more coherent proceeding than the one described in the instant Motion.  Before announcing the

sentence, the court confirmed Albarran-Sotelo was "knowingly, voluntarily and expressly"

waiving his right to be physical present and that he understood the purpose of the proceeding.[34]

The court then discussed the "unusual sentence that [he] and the United States . . . agreed to

recommend,"[35] noting it was far lower than the "nine and twelve months [of] incarceration with

a lengthy period of supervision to follow" that he could otherwise expect given his past

violations.[36]  In any event, the court announced it was "going to impose the sentence [his] lawyer

---

[30] *Id.* at 7–10.

[31] *Id.* at 4–7.

[32] *Id.* at 6 (citing Dkt. 45 at 14:19), 7 (citing Dkt. 45 at 16:17–18).

[33] *Id.* at 7.

[34] Dkt. 45 at 3:20–23, 4:2–6.

[35] *Id.* at 10:20–22.

[36] *Id.* at 11:1–5.

negotiated with the United States"[37]—a lower sentence "than [it] would ordinarily impose."[38]  In

doing so, the court hinted at the severe implications "if [Albarran-Sotelo] were to return yet

again in view of [his] now three federal convictions for an immigration offense."[39]

      After announcing Albarran-Sotelo would "receive a custodial sentence of six months

with credit for time served and a three-year period of supervised release to follow,"[40] the court

then described the conditions that would govern his term of supervised release:

> Given the defendant's immigration status and the offense conduct in this case, we'll
> impose our standard special condition as well as our general condition.  So, Mr.
> Albarran, I'm ordering that you not commit, for the three-year period that you're
> on supervised release[,] . . . any federal, state or local crime; that you not illegally
> possess any controlled substances; and that you comply with the terms and
> conditions of supervision that apply following deportation as well as the special
> condition I referenced a moment ago, and that is this:
> . . .
> [I]f for some reason you are accidentally released instead of being deported, you
> are required to contact the United States Probation Office here in the District of
> Utah within 72 hours of your release.  Similarly, if you return to the United States
> for any reason during the three-year period of your supervision, and please
> understand that doing so would be a criminal offense, but if you do return for any
> reason, you are ordered to contact the United States Probation Office within 72
> hours of your arrival in the country.[41]

Albarran-Sotelo does not aver, nor does the record show, any technical glitches, translation

errors or other misunderstandings that undermined the court's pronouncement of these

conditions.  Rather, Albarran-Sotelo relies on the untenable argument that his initial confusion

about the length of his prison sentence means he did not understand the conditions of supervised

---

[37] *Id.* at 11:11–13.

[38] *Id.* at 11:17–18.

[39] *Id.* at 11:22–25.

[40] *Id.* at 12:14–17.

[41] *Id.* at 13:2–21.

release.[42]  "Based on the record in this case," he maintains "it cannot be inferred [he] knew that he was on supervised release or what the terms of any supervision might be."[43]  On the contrary, the court repeatedly stated that a term of supervised release would follow Albarran-Sotelo's incarceration,[44] and made the relevant conditions abundantly clear.[45]  Separately, Albarran-Sotelo was given actual notice that he was on supervised release during his appearance before the magistrate judge on August 4, 2022—following the first purported violation of his supervised release.[46]  In addition, Albarran-Sotelo had the benefit of counsel from the Federal Public Defender Office throughout these proceedings.[47]

In sum, the record shows Albarran-Sotelo was fully apprised of the conditions of his supervised release.  The court went beyond the requirements of due process to ensure he understood the severe consequences of another 8 U.S.C. § 1326 violation and that any reentry

---

[42] *See* Dkt. 47 at 10 ("Mr. Albarran's question put the court on notice that he didn't understand the sentence.").  Note that the court promptly addressed Albarran-Sotelo's question about his custodial sentence, reasserting that he faced a "total of eight months, six months for the illegal reentry case and two months . . . consecutive to that [for] the supervised release violation."  *See* Dkt. 45 at 16:9–20.  No further questions were raised.

[43] Dkt. 47 at 10–11.

[44] Dkt. 45 at 12:14–17 (ordering a custodial sentence of six months with . . . a three-year period of supervised release to follow"), 13:2–21 (twice noting that Albarran-Sotelo had a "three-year period . . . on supervised release" and explaining the relevant "general and special" conditions), 14:9–18 (explaining that supervised release would not be imposed for the violation related to his 2016 conviction "given that [the court] just imposed a three-year period supervision in the other matter").

[45] *See id.* at 13:2–21; *see also id.* at 11:22–25 ("I'm sure [defense counsel] has discussed with you the likely implications for the sentence you'd be looking at if you were to return yet again in view of now three federal convictions for an immigration offense.").

[46] *See* Dkt. 27.

[47] *See* Dkt. 5, *Docket Text Order Appointing Federal Public Defender Adam G. Bridge for Albarran-Sotelo*; Dkt. 45 (reflecting Bridge's representation of Albarran-Sotelo at the January 7, 2021 sentencing hearing); Dkt. 27 (showing the notice of appearance by Ben Hamilton for Albarran-Sotelo and his representation throughout the August 4, 2022 proceeding).

"would be a criminal offense."[48]  During the proceeding, Albarran-Sotelo had access to an interpreter—interrupted only by momentary glitches that were resolved before the court delivered its oral pronouncement—and was represented by counsel.[49]  Under these circumstances, "there [would be] no fundamental unfairness in holding [him] responsible for violating the conditions of his supervised release," provided, of course, the requirements of 18 U.S.C. §§ 3553, 3583(e) are otherwise satisfied.[50]  Indeed, other courts have found actual notice under very similar circumstances,[51] and the court sees no reason to deviate from their persuasive reasoning.  It would defy both the structure of § 3583 and courts' longstanding approach to supervised release to provide an effective end-run around revocation whenever a defendant expresses—or feigns—misunderstanding of clearly articulated conditions.[52]

---

[48] *See id.* at 13:2–21; *see also Kennedy*, 106 F. App'x at 690 ("Due process requires that the conditions of supervised release be sufficiently clear to inform a released prisoner of what conduct will result in his or her return to prison.").

[49] *See* Dkt. 45 at 9:8–15, 10:15.

[50] *See United States v. Mendoza*, No. CR 10-0734 WHA, 2017 U.S. Dist. LEXIS 64286, at *6–8 (N.D. Cal. Apr. 27, 2017) (enforcing the terms of supervised release where the defendant appeared confused about the purpose of his initial sentencing hearing, but the court clearly admonished him "not [to] commit another federal, state or local crime").

[51] *See, e.g.*, *id.*; *United States v. Felix*, 994 F.2d 550, 550–52 (8th Cir. 1993) (affirming revocation of supervised release where the district court orally advised the defendant of relevant conditions and warned that violating these conditions "would be a very bad idea"); *Perez-Fierro*, 256 F. App'x at 97 (concluding the defendant received actual notice where he was told "orally at his original sentencing hearing that he was forbidden from reentering or attempting to reenter the United States"); *Laplante v. United States*, No. 94-2011, 1995 U.S. App. LEXIS 14550, at *2 n.1 (1st Cir. June 13, 1995); *United States v. Aguilar-Martinez*, No. CR 11-50174-TUC-RCC (BPV), 2011 U.S. Dist. LEXIS 147251, at *4 (D. Ariz. Dec. 6, 2011) (concluding the defendant received actual notice where he "received . . . notice orally that he would be placed on supervised release . . . [and told] that he not violate any federal, state or local law.").

[52] *Cf. United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) (noting that "it is primarily the breach of trust" that is sanctioned in revocation proceedings).

**CONCLUSION**

For the foregoing reasons, Defendant's Motion is DENIED.

SO ORDERED this 6th day of April, 2023.

BY THE COURT:

_____

ROBERT J. SHELBY
United States Chief District Judge